# In the United States Court of Federal Claims

| | |
|---|---|
| **BES DESIGN/BUILD LLC,**<br><br>                          *Plaintiff,*<br><br>v.<br><br>**THE UNITED STATES,**<br><br>                          *Defendant.* | **No. 19-1893**<br>**(Filed: January 26, 2024)**<br><br>Not for Publication |

*Jerome E. Speegle*, Speegle, Hoffman, Holman & Holifield LLC, Mobile, Alabama, for Plaintiff.

*Ioana C. Meyer*, Trial Attorney, *Steven J. Gillingham*, Assistant Director, *Patricia M. McCarthy*, Director, Commercial Litigation Branch, *Brian M. Boynton*, Principal Deputy Assistant Attorney General, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.

## OPINION AND ORDER

**HADJI,** *Judge*.

Plaintiff BES Design/Build LLC brings this action for breach of contract and breach of the implied covenant of good faith and fair dealing against the Department of Veteran's Affairs (VA). 2nd Am. Compl. ¶ 1 (ECF 18). Before the Court is the Government's Amended Motion for Summary Judgment (ECF 46). The motion is fully briefed. Def.'s Am. Mot. Summ. J. (ECF 46); Pl.'s Resp. (ECF 47); Def.'s Reply (ECF 48). The Government asserts that summary judgment is warranted because Plaintiff's claims rest on an unfounded contractual interpretation and there is no genuine issue of material fact. ECF 46 at 13-20. For the following reasons, the Court **GRANTS** the Government's Amended Motion for Summary Judgment.

## BACKGROUND

In 2014, the VA issued a request for proposals (RFP) for asbestos abatement at VA healthcare system facilities in Puerto Rico. ECF 46-1 at 2. The contemplated contract required the contractor to perform monitoring, inspection, testing, and other services to prevent harm to VA patients and employees during the abatement work. *Id.* at 15. The VA anticipated an indefinite delivery/indefinite quantity contract for which task orders would

1

be issued on a per project basis. *Id.* at 15. The ordering period, described in the RFP as a "period of performance," consisted of one base year and two one-year options. *Id.*

The VA awarded contract number VA248-14-D-0191 (the Basic Contract) to BES with an effective date of September 1, 2014. *Id.* at 78. Section B.4 of the Basic Contract, which was titled Price/Cost Schedule, listed three items. *Id.* at 93. Item 0001 was the "Base Period" ("09-01-2014 to 08-31-2015"), Item 1010 was "Option 1" ("09-01-2015 to 08-31-2016"), and Item 2001 was "Option 2" ("09-01-2016 to 08-31-2017"). *Id.* All three items provided a description of supplies/services, which stated: "Third Party Asbestos Abatement Project to perform the necessary monitoring, inspection, testing and other support services." *Id.* All three items had a quantity of "1.00," a unit of "JB," a unit price of "$13,500.00," and an "Amount" of "$13,500.00." *Id.* The unit description of "JB" was not defined. *See id.* A "Grand Total" of "$40,500.00" was listed. *Id.* Over the next four years, the VA issued four task orders for separate abatement projects under the contract. *Id.* at 114, 166, 211, 260.

Task order three (TO3), specifically at issue here, was issued on August 8, 2016. *Id.* at 211. The task order was based on a three-page proposal submitted by BES, which included a two-page cover letter that provided a brief narrative of the proposed figures. *Id.* at 257-59. The proposal suggested the mobilization and daily assignment of two asbestos supervisors and four industrial hygiene technicians per day for up to 250 days. *Id.* at 257. The proposal further explained that it "is understood that the project may require more than the estimated number of days to complete and the fee will be adjusted based upon the established daily rate of $2,892.78 with the six personnel on site each day." *Id.* Based on this rate, the proposal calculated the total cost of the project at $723,187.50 ($2,892.78 X 250 days). *Id.* at 257, 259.

The VA ultimately issued TO3 with an award of the same amount ($723,187.50). *Id.* at 211. TO3 described the asbestos monitoring services as covering the "Main Building Seismic Correction" project on floors three through nine. *Id.* at 214. TO3 estimated the project's duration at 250 days but stated that the exact duration "depends on the asbestos abatement estimate of the particular project." *Id.*

BES commenced performance on TO3 on July 11, 2016. ECF 48-1 at 4. It is undisputed that during performance BES never had six personnel on site per day. Due to "unforeseen construction issues," performance under TO3 took longer than expected, resulting in the VA issuing a bilateral modification on August 15, 2017, extending the period of performance to July 31, 2018. ECF 46-1 at 274. The modification did not obligate additional money for the project, *id.*, because funds remained available under the initial TO3 award. ECF 48-1 at 59. The modification included the following release language: "This extension represents full and complete compensation due to Contractor for all costs, direct and indirect, and all time associated with the change performed herein, including but not limited to, all costs incurred for extended overhead, disruptions, suspension of work, labor inefficiencies, and impact costs." ECF 46-1 at 274. At the time of the modification,

2

BES had only invoiced a total of $437,438.85. ECF 48-1 at 59. Indeed, invoices in the record show that BES consistently billed less than the projected rate of $2,892.78 per day. *See* ECF 48-1 at 6-141.

BES ultimately worked 195 additional days. ECF 46-1 at 275-98. On July 31, 2018, the last day of the extended performance period, the VA agreed to a second bilateral modification obligating $102,797.81 to cover additional work performed during June and July of 2018 that could not be funded with the original award of $723,187.50. *See id.* at 301. This modification did not contain any release language. *Id.* Ultimately, the VA paid BES a total of $825,985.31 for performance under TO3 as modified ($723,187.50 + $102,797.81). ECF 48-1 at 4-5.

On October 4, 2018, BES submitted a three-part claim to the Contracting Officer. ECF 46-1 at 316. First, BES claimed that it was entitled to $2,892.78 per day for the 195 days of extra work. *Id.* Second, BES claimed that it was entitled to payment of $58,072 in home office overhead, which it calculated at a rate of $123.30 per day for 471 days. *Id.* To its claim, BES appended the project daily logs from July 11, 2016, through July 31, 2018, to show the dates worked, the employees on site, and the number of asbestos samples taken each day. *Id.* Third, BES requested an additional $750 for five unpaid samples. *Id.*

On December 13, 2018, the Contracting Officer issued a final decision (COFD) with three determinations. ECF 46-1 at 329-31. First, the Contracting Officer determined that BES was not entitled to its proposed daily rate of $2,892.78 for the 195 additional days because BES did not provide six personnel on site for any of the additional days worked. *Id.* at 330. Instead, she determined the VA had "paid for all the hours the on site personnel worked, at the originally negotiated rate of $60.26 per hour." *Id.* Second, the Contracting Officer determined that no home office overhead was warranted because BES did not provide any "factual evidence and/or supported documentation that justifie[d] the payment of $58,822.00." *Id.* at 331. Finally, the Contracting Officer determined that the Government owed BES $1,500 for ten unpaid asbestos samples (rather than the five samples BES requested). *Id.* at 329. The Contracting Officer concluded that BES would receive $1,500 for the additional samples upon receipt of an invoice from BES. *Id.*

Rather than submit an invoice, BES appealed the COFD to this Court. 2nd Am. Compl. ¶ 1. BES alleges breach of contract and breach of the implied covenant of good faith and fair dealing resulting from the Government's failure to adequately pay it for performance on TO3. *Id.* ¶¶ 8-18. BES argues that it is entitled to $2,892.78 per day for the additional 195 days worked or, in the alternative, that it should receive $58,072 in home office overhead. *Id.* ¶¶ 10-13. On August 4, 2023, the Government filed the instant Amended Motion for Summary Judgment.

## LEGAL STANDARD

According to the Rules of the United States Court of Federal Claims, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Rule 56(a).[1] "[A]ll evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable factual inferences should be drawn in favor of the nonmoving party." *Dairyland Power Co-op. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994).

The Supreme Court of the United States has instructed that "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis omitted). Disputes over facts that are not outcome-determinative will not preclude the entry of summary judgment. *Id.* at 248. A dispute about a material fact is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Id.*

A summary judgment motion is properly granted against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case and for which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A nonmovant will not defeat a motion for summary judgment "unless there is sufficient evidence favoring the nonmoving party for [the fact-finder] to return a verdict for that party." *Anderson*, 477 U.S. at 249. "A nonmoving party's failure of proof concerning the existence of an element essential to its case on which the nonmoving party will bear the burden of proof at trial necessarily renders all other facts immaterial and entitles the moving party to summary judgment as a matter of law." *Dairyland Power*, 16 F.3d at 1202.

Under the Contract Disputes Act, an action brought in this Court seeking review of a contracting officer's decision "shall proceed de novo." 41 U.S.C. § 7104(b)(4). "De novo review precludes reliance upon the presumed correctness of the decision. Thus, once an action is brought following a contracting officer's decision, the parties start in court or before the [Court] with a clean slate." *Wilner v. United States*, 24 F.3d 1397, 1401-02 (Fed. Cir. 1994) (en banc) (citation omitted).

## DISCUSSION

BES raises two claims: (I) breach of contract and (II) breach of the implied covenant of good faith and fair dealing. These claims are generally based on issues of contract interpretation, not genuine issues of fact, and are thus amenable to summary judgment resolution.

### I. Breach of Contract

To prove a breach of contract claim, a plaintiff must establish: "(1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach." *San Carlos Irr. & Drainage Dist. v.*

---

[1] Court of Federal Claims Rule 56(a) is the same as Federal Rule of Civil Procedure 56(a). *Compare* RCFC 56(a) *with* Fed. R. Civ. P. 56(a).

4

*United States*, 877 F.2d 957, 959 (Fed. Cir. 1989). Once a breach of contract is established, the burden shifts to the defendant to provide an affirmative defense excusing performance. *Shell Oil Co. v. United States*, 751 F.3d 1282, 1297 (Fed. Cir. 2014).

BES makes two alternative breach of contract arguments. 2nd Am. Compl. ¶¶ 10-13. First, BES claims that the Government breached the Basic Contract and TO3 by making payment on a per person / per day basis. *Id.* ¶ 10. BES contends that it should have been paid the full daily rate of $2,982.78 regardless of staff count. *Id.* Second, BES claims that the VA should have paid overhead at the daily rate of $123.30 for 471 additional days of delay. *Id.* ¶¶ 12-13. The Court addresses each argument in turn.

### A. The Government did not breach the contract by making payment on a per person / per day basis.

BES argues that it should have received a lump sum of $723,187.50 for the first 250 days of performance and $2,892.78 per day after that. ECF 47 at 7. BES contends that the Government committed breach of contract by ignoring the fixed-price nature of the Basic Contract, and TO3 and by considering the number of personnel provided by BES. *Id.* Although BES does not dispute that it provided fewer than six personnel each day, BES contends that it should have been paid $2,892.78 per day regardless of its staff count. *Id.* BES acknowledges that its daily rate was initially based on six individuals on site but disputes that the attendance of six employees was an express requirement of performance. *Id.*

Resisting this reasoning, the Government argues that summary judgment is appropriate because the parties agreed to payment on a per person / per day basis and there is no factual dispute that the VA failed to complete payment on that basis. ECF 48 at 4. To support its interpretation, the Government points to language in the technical proposal suggesting "the mobilization and daily assignment of Two (2) Asbestos Supervisors per day for up to 250 days and the mobilization and daily assignment of Four (4) Industrial Hygiene Technicians per day for up to 250 days." ECF 46-1 at 257. The Government asserts that this language required BES to provide six workers each day to receive the full daily rate of $2,892.78. ECF 48 at 4.

Whether BES had a duty to provide six personnel per day is a matter of contract interpretation, which the Court decides as a matter of law. "It has been a fundamental precept of common law that the intention of the parties to a contract control[s] its interpretation." *Beta Sys., Inc. v. United States,* 838 F.2d 1179, 1185 (Fed. Cir. 1988). "[I]ntent is determined by looking to the contract and, if necessary, other objective evidence." *Flexfab, LLC v. United States,* 424 F.3d 1254, 1262 (Fed. Cir. 2005). "If the terms of a contract are clear and unambiguous, they must be given their plain meaning—extrinsic evidence is inadmissible to interpret them." *Barron Bancshares, Inc. v. United States,* 366 F.3d 1360, 1375 (Fed. Cir. 2004). When looking to the plain language, the Court must "give the words of the agreement their ordinary meaning unless the parties mutually intended and agreed to an alternative meaning." *Jowett, Inc. v. United States,* 234

5

F.3d 1365, 1368 (Fed. Cir. 2000). Further, the Court "must interpret the contract in a manner that gives meaning to all of its provisions and makes sense." *Id.*

As BES points out, there is no provision in the Basic Contract or TO3 that expressly requires a specific number of staff. The only mention of a specific number of personnel appears in the technical proposal for TO3 submitted by BES on May 12, 2016. ECF 46-1 at 257. Notably, the proposal shows that BES intended to collect $2,892.78 per day based on the presence of six persons on site. ECF 46-1 at 257. BES's proposal included the mobilization of two asbestos supervisors and four industrial hygiene technicians per day for up to 250 days. *Id.* For additional days over the initial 250, BES stated that the "fee will be adjusted based upon the established daily rate of $2,892.78 *with the six personnel on site each day*." *Id.* (emphasis added). Attached to BES's proposal was a breakdown of its costs:

```
VA Medical Center
San Juan, Puerto Rico

Phase III Seismic Bracing - Asbestos Abatement Monitoring

BES original proposal was $13,500 for a sample project of 14 days for 2 personnel

964.25 per day        1 Supervisor/1 IH Technician        $482.125 per person

Projected length of project - 250 days
2 Supervisors/4 IH Technicians

6 x 482.125  = @2892.75 per day  = 723,187.50
```

*Id.* at 259.

The record indicates that the parties incorporated the pricing terms of the proposal into TO3. The proposal calculated the total cost of the project at $723,187.50, ECF 46-1 at 257-259, and the VA incorporated this figure as the award amount when it issued TO3. *Id.* at 211. BES does not dispute that the proposal was accepted by the Government and formed the basis for TO3. *Id.* at 341 (acknowledging that "[t]he Government accepted BES's bid proposal letter, dated May 12, 2016, as the basis for the Contract").

Even incorporating the proposal, however, the Court finds that the Basic Contract and TO3 are subject to more than one reasonable interpretation. On the one hand, it can be argued that the proposal's contemplation of six personnel per day was an express requirement of performance. On the other hand, a reasonable person could agree with BES that the personnel specification was not an express requirement but merely a pricing

6

estimate. The reference to six personnel occurs in relation to calculating the project's overall cost and does not appear anywhere else in the Basic Contract or TO3, including, as one might expect, in TO3's "scope of work" section (Section B), which outlines the contractor's duties and scope of performance. *See* ECF 46-1 at 214-17. Further, the corresponding Price/Cost Schedule in Section B of the Basic Contract offers no clarity because it lists a quantity of "1.00," an undefined unit of "JB," a unit price of "$13,500.00," and an "Amount" of "$13,500.00." *Id.* at 93. While the quantity of "1.00" could be read to indicate that the parties meant for the six personnel to be priced as one, without defining the unit of "JB" and by listing a corresponding unit price of $13,500.00 instead of the undisputed daily rate of $2,982.78, one cannot make any reasonable conclusions about what was meant by the quantity or unit terms in the Price/Cost Schedule. As such, the Court finds that the plain language of the relevant contractual documents, including the proposal, is ambiguous as to the required number of personnel on site.

Because the plain language is ambiguous, the Court may rely on extrinsic evidence to discern the parties' intent. *See Barron Bancshares, Inc.*, 366 F.3d at 1375. It is well settled that the practical interpretation of a contract, as shown by the conduct of the parties, is of "great weight in interpreting the contract." *Gen. Warehouse Two, Inc. v. United States*, 181 Ct. Cl. 180, 187 (1967). Indeed, the action of the parties "before a controversy arises is highly relevant in determining what the parties intended." *Northbridge Elecs., Inc. v. United States*, 175 Ct. Cl. 426, 438 n.8 (1966).

Here, the undisputed actions of the parties show that they intended for BES to be paid on a per person / per day basis. From the start of performance, BES invoiced the VA based on the number of people on site per day. *See* ECF 46-1, at 335-36. BES does not dispute the authenticity or the accuracy of these invoices, which are documented comprehensively at ECF 48-1 at 6-141. Consider, for example, the amount billed for the period of July 11, 2016, through October 5, 2016. Daily work logs for that time period show that BES worked nineteen days and provided two to three people on site each day for a total number of thirty-three shifts. ECF 46-1 at 275-76. This number multiplied by the $482.125 per person / per day rate with a BES markup is $17,839.00—the amount BES invoiced for that period. ECF 48-1 at 4. Review of the other invoices confirm this payment scheme. *See* ECF 48-1 at 6-141.

The extrinsic evidence could hardly be clearer. BES never attempted to charge a flat daily rate regardless of the number of personnel on site; instead, it billed the VA on a per person / per day basis. *See id*. There is no indication that BES was dissatisfied with this scheme or the payment it received until it filed its certified claim with the Contracting Officer more than two years after performance began. BES cannot now argue that it should have been paid a daily rate of $2,892.78 regardless of staff count when BES's own billing practices throughout the period of performance prove otherwise.

Ultimately, the intent of the parties is plain. BES was required to provide six personnel per day to receive the daily rate of $2,892.78. Because it is undisputed that BES

routinely provided fewer than six people per day, it was appropriate for the VA to adjust the daily rate based on the number of personnel that were in fact provided.

Having resolved this question of contract interpretation, there is no further genuine issue of material fact that would prevent summary judgment against BES on this claim. Indeed, accepting that payment was to be made on a per person / per day basis, BES does not dispute the sufficiency of payment on that basis. Nor does BES dispute the accuracy of the invoices and daily logs submitted by the Government, which comprehensively detail the payments rendered on that basis. Therefore, summary judgment on this claim is appropriate.

### B. BES is not entitled to unabsorbed home office overhead.

BES further argues that it should be compensated for its home office expenses of $58,072, calculated at $123.30 per day for 471 days. 2nd Am. Compl. ¶¶ 12-13. BES contends that "the Government was in complete control of the work of its asbestos removal contractor," and "[t]he Government knows, and admits, that its own contractor delayed the work, not [BES]." ECF 47 at 9-10.

The Government counters that there is no duty for an agency to pay unabsorbed home office overhead unless there is a government-caused suspension of performance or other delay. ECF 48 at 7. According to the Government, "the VA negotiated a change order extending the period of performance for a known period of time" but BES "experienced no suspension of work, no idle time, and no uncertain periods of delay during the agreed-upon extended contract performance period." ECF 46 at 17.

This Court uses a specific formula—the *Eichleay* formula—for estimating proportionate home office overhead that may be unabsorbed due to a suspension. *JMR Constr. Corp. v. United States*, 117 Fed. Cl. 436, 443 (2014) ("[T]he so-called '*Eichleay*' formula is the sole method through which contractors are able to recover for unabsorbed home office overhead."). There are three prerequisites to application of the *Eichleay* formula: "First, the contractor must demonstrate that there was a government-caused delay not excused by a concurrent contractor-caused delay. Second, the contractor must show that it incurred additional overhead expenses . . . . Third, the contractor must establish that it was required to remain 'on standby' for the duration of the delay." *Id.* at 443 (citations omitted).

As for the last requirement, a contractor may prove that he was on "standby" through direct evidence, such as a written order suspending all work on the contract for an uncertain duration, or indirect evidence. *P.J. Dick, Inc. v. Principi*, 324 F.3d 1364, 1371 (Fed. Cir. 2003). If relying on indirect evidence, the contractor must show: (1) that the government-caused delay was substantial and for an indefinite duration; (2) that the contractor was required to remain ready to resume work on the contract; and (3) that there was an "effective suspension of much, if not all, of the work on the contract." *Id.*

Here, there is no record evidence that BES was ever on standby. In fact, BES fails to point to any evidence on the record showing an "effective suspension" of its work on TO3. The daily work logs submitted by BES show that BES routinely performed on TO3 through the end of the extension on July 31, 2018. ECF 46-1 at 275-98. BES appears to conflate the parties' extension of the original period of performance with an effective suspension of work—an approach which the Federal Circuit has soundly rejected. *C.B.C. Enters., Inc. v. United States,* 978 F.2d 669, 675 (Fed. Cir. 1992) ("[T]he Claims Court properly recognized that it is inappropriate to use the *Eichleay* formula to calculate home office overhead for contract extensions . . . .").

Further, even if the contract extension qualified as a suspension of performance, which it does not, BES has not produced any evidence showing that the extension was for an indefinite duration. Rather, the bilateral modification of TO3 expressly states that "[t]he period of performance will be extended up to July 31, 2018." ECF 46-1 at 274. In sum, the undisputed record evidence shows that BES has not met the requirements for standby and, thus, summary judgment is appropriate on its unabsorbed home office overhead claim.

### C. The release language in the first contract modification does not apply.

For the sake of thoroughness, the Court finds it appropriate to address the release language contained in the first bilateral modification to TO3. The release language bars Plaintiff's claims if enforced as written. *See* ECF 46-1 at 274. As discussed above, the release held the extension to be "full and complete compensation due to Contractor for all costs, direct and indirect, and all time associated with the change performed herein, including but not limited to, all costs incurred for extended overhead, disruptions, suspension of work, labor inefficiencies, and impact costs." ECF 46-1 at 274. This language presumably defeats Plaintiff's claims for both overhead and direct costs.

Yet, the release is scarcely mentioned in the briefings. Even the Government does not rely on the release to its full extent, limiting its application to the issue of overhead costs. ECF 46 at 16. This is likely for good reason. On July 31, 2018, the final day of performance, the parties issued a second bilateral modification devoid of any release language and which obligated an additional $102,797.81 to BES for work performed during the extension. *See* ECF 46-1 at 301. There is simply no way to square this later obligation with the language in the release of "full and complete compensation" without effectively modifying one provision or the other. *McAbee Constr., Inc. v. United States,* 97 F.3d 1431, 1435 (Fed. Cir. 1996) (the Court "must interpret the contract in a manner that gives meaning to all of its provisions and makes sense").

Again, the only clear throughline in this case, amidst a myriad of contractual ambiguities and inconsistencies, is the making and accepting of payment on a per person / per day basis. The record shows that BES invoiced the VA on a per shift basis until the initial award ran out, and then the VA issued the final $102,797.81 to cover the remaining shifts. *See* ECF 48-1 at 6-141. The Court finds the most reasonable interpretation of the

9

contract is the one that aligns with this payment scheme, and for the reasons discussed above, summary judgment is appropriate on that interpretation.

## II. Breach of Good Faith and Fair Dealing

BES further alleges that the VA failed to adhere to the implied covenant of good faith and fair dealing by not compensating Petitioner for additional work performed outside the initial 250-day period. 2nd Am. Compl. ¶ 17. However, the Court holds that BES has abandoned this claim. This Court recognizes that "[a] party's failure to raise an argument in an opening or responsive brief constitutes waiver." *Sarro & Assocs., Inc. v. United States*, 152 Fed. Cl. 44, 58 (2021); *see also Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) ("We have previously held that a plaintiff has 'abandoned . . . claims by not raising them in opposition to [the defendant's] motion for summary judgment.'") (quoting *Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005)). Here, BES failed to defend its claim in its responsive brief to the Government's Amended Motion for Summary Judgment, *see generally* ECF 47, despite the Government identifying a lack of evidence to support a breach of the implied covenant of good faith and fair dealing. ECF 46 at 18-20. Based on this non-responsiveness, the Court holds that BES waived its claim. Alternatively, BES has failed to identify any evidence to sustain the claim past summary judgment. *See Celotex Corp.*, 477 U.S. at 324.

## III. Summary Judgment Inapplicable to Unpaid Asbestos Samples

The Court addresses one final matter. BES argues that granting summary judgment for the Government will prevent BES from collecting the $1,500 awarded by the Contracting Officer for unpaid asbestos samples. That is not the case. The issue of unpaid samples is not before the Court, as BES never challenged the Contracting Officer's decision on that claim (nor could it since the ruling is favorable to BES). Because that claim was never appealed, nothing in this decision should prevent BES from collecting the $1,500 awarded by the Contracting Officer.

## CONCLUSION

For the foregoing reasons, the Government's Amended Motion for Summary Judgment (ECF 46) is **GRANTED**. The Clerk of Court is directed to enter judgment in favor of the United States.

**IT IS SO ORDERED.**

*[signature]*

PHILIP S. HADJI
Judge